IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| DATA ENGINE TECHNOLOGIES LLC,<br><br>        Plaintiff,<br><br>v.<br><br>INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>        Defendant. | Civil Action No. 6:13-CV-00858-RWS-JDL |

**DEFENDANT IBM'S OPPOSITION TO
<u>PLAINTIFF'S EMERGENCY MOTION TO STRIKE</u>**

## TABLE OF CONTENTS

**Page**

I. Introduction ................................................................................................................... 1

II. Factual Background ....................................................................................................... 3

III. Legal Standards ............................................................................................................. 4

IV. Argument ....................................................................................................................... 5

    A. IBM's Invalidity Report Fully Adheres To Its Prior Disclosures, And Data Engine Does Not Demonstrate Otherwise. ........................................................... 5

        1. IBM Previously Disclosed The Invalidity Theories Set Forth In Exhibit 1 To Data Engine's Motion. ............................................................ 6

        2. Data Engine's Other Arguments Should Be Rejected. ............................... 7

    B. IBM's Expert Report Adheres To This Court's Limits On The Number Of Prior Art References. ............................................................................................ 8

    C. Data Engine's Request For Leave To Designate A Third Expert Should Be Denied. ............................................................................................................... 12

V. Conclusion ................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allure Energy, Inc. v. Nest Labs, Inc., et al.*,
  C.A. No. 9-13-CV-102 (E.D. Tex. May 19, 2015) ........................................................ 4, 10, 11

*Computer Acceleration Corp. v. Microsoft Corp.*,
  503 F. Supp. 2d 819 (E.D. Tex. 2007) ...................................................................................... 4

*DataTreasury Corp. v. Wells Fargo & Co.*,
  C.A. No. 2:06-CV-72 DF, 2010 U.S. Dist. LEXIS 110658 (E.D. Tex. Sep. 13, 2010) ............. 5

*Droplets, Inc. v. Overstock.com, Inc.*,
  Case 2:11-cv-00401-JRG, Dkt. 346 (E.D. Tex. Jan. 9, 2015) ............................................. 2, 12

*Personal Audio, LLC v. Togi Entertainment, Inc.*,
  No. 2:13-cv-00013-JRG-RSP, Dkt. 252 (E.D. Tex. Aug. 6, 2014) ................................ 2, 11, 12

*ROY-G-BIV Corp. v. ABB Ltd., et al.*,
  63 F. Supp. 3d 690 (E.D. Tex. 2014) ........................................................................................ 4

Defendant International Business Machines Corporation ("IBM") hereby opposes the Emergency Motion To Strike Expert Report Of IBM And For Leave To Supplement Rebuttal Expert Report (Dkt. 103) filed by Plaintiff Data Engine Technologies LLC ("Data Engine").

## I.     Introduction

Data Engine seeks an order striking the entirety of IBM's invalidity expert report, arguing that it "cannot even determine the specific references upon which IBM intends to proceed." (Dkt. 103 at 2.) Data Engine repeats that exact argument—and seeks the same expansive relief—in similar motions filed in both of its other co-pending cases against IBM, even though each of those cases involves different invalidity reports submitted by different experts concerning different references. (13-859, Dkt. 83 at 3; 13-860, Dkt. 105 at 3.) Additionally, Data Engine seeks leave to designate a third expert. As explained herein, Data Engine's allegations of mass confusion do not withstand scrutiny. IBM's expert reports fully comport with its earlier disclosures and this Court's applicable rules. Data Engine's motion should be denied.

First, Data Engine's motion does not remotely demonstrate that it is entitled to the broad relief it requests. This is a two-patent case. Yet Exhibit 1 to its motion, which purportedly "identifies the references and combinations presented in IBM's invalidity expert report that were not properly disclosed," (Dkt. 103 at 3), only identifies alleged deficiencies with respect to one of the patents-in-suit—the '367 patent. That fact itself undermines Data Engine's claims of widespread confusion, and its motion to strike the entirety of IBM's invalidity report should be denied on that basis alone.

Second, even regarding the few invalidity theories actually addressed in its motion, Data Engine's arguments are incorrect and should be rejected. Notably, while Data Engine argues that some prior art theories were previously undisclosed, it does not even attach IBM's earlier

disclosures to its motion, such that this Court could meaningfully evaluate Data Engine's arguments. As inspection of those disclosures demonstrates, the theories advanced by IBM's invalidity expert were amply disclosed to Data Engine in advance.

Third, the Court should reject Data Engine's contention that IBM has exceeded its number of allotted prior art references under General Order No. 13-20. The parties' dispute ultimately centers on whether a single-reference obviousness theory counts as a separate "reference" under the order. In the only decision of which IBM is aware that addresses this question, a Court in this District rejected the position Data Engine takes here, explaining that a "reference asserted for anticipation may also serve as a single-reference obviousness combination" without being considered two separate "references."[1] But more significantly, this is a dispute that Data Engine readily could have raised with IBM or this Court after IBM served its Preliminary Election of Asserted Prior Art ("Preliminary Election") pursuant to G.O. 13-20 on March 12, 2015 (eight months ago), or after IBM served its Final Election of Asserted Prior Art ("Final Election") pursuant to G.O 13-20 on August 31, 2015 (almost three months ago). Data Engine provides no credible explanation for why it chose to wait until October 29, 2015—two months after IBM's Final Election, nearly a month after Data Engine received IBM's invalidity report, and just one week before the deadline for rebuttal reports—to raise the issue for the first time, and then asking this Court to provide emergency relief mere weeks before dispositive motions and other pre-trial deadlines. Its motion should be denied for that additional reason. *See Droplets, Inc. v. Overstock.com, Inc.*, Case 2:11-cv-00401-JRG, Dkt. 346, at 4 (E.D. Tex. Jan. 9, 2015) (denying motion to strike invalidity expert report where plaintiff did not object

---

[1] *Personal Audio, LLC v. Togi Entertainment, Inc.*, No. 2:13-cv-00013-JRG-RSP, Dkt. 252, at 2 (E.D. Tex. Aug. 6, 2014).

to defendant's final election setting forth number of prior art references and combinations until after service of expert reports).[2]

## II. Factual Background

This is one of three patent infringement cases that Data Engine filed against IBM on November 4, 2013. In this case, Data Engine alleges infringement of two patents. (Dkt. 95.) The parties have exchanged expert reports, several expert depositions have already been conducted (including the deposition of IBM's technical expert in this case), and all discovery is set to close next week, on November 24, 2015. (Dkt. 102.) Dispositive motions are due on January 8, 2015, a pretrial conference is set for May 5, 2016, and trial is scheduled to begin on May 23, 2016. (*Id.*)

More than a year ago, on September 19, 2014, IBM served its invalidity contentions pursuant to P.R. 3-3. (Dkt. 48.) On March 12, 2015, IBM served its Preliminary Election, which is attached as Exhibit A. On August 31, 2015, IBM served its Final Election, which is attached as Exhibit B. On October 6, 2015, IBM served the expert report of Dr. David Maier regarding invalidity. IBM likewise served invalidity expert reports on October 6, 2015, in Case No. 13-859 (from Dr. Brad Myers) and Case No. 13-860 (from Ms. Susan Spielman).

But the first time that Data Engine raised any concern regarding ***any*** aspect of IBM's various invalidity disclosures—its P.R. 3-3 invalidity contentions, its Preliminary Election, its Final Election, or any alleged confusion on Data Engine's part regarding the references upon IBM intended to proceed—was on October 29, 2015, nearly a month after IBM served its invalidity expert reports, and less than a week before the deadline for rebuttal reports. (Ex. C.)[3]

---

[2] In *Droplets*, the defendant agreed to voluntarily reduce the number of prior art references on terms consistent with those set forth in General Order 13-20.

[3] At the time that Data Engine first approached IBM regarding these issues, rebuttal expert reports were due on November 6, 2015. One day before that deadline, at Data Engine's request, IBM agreed to a continuance of the deadline until November 9, 2015.

3

The parties met and conferred on November 2 and November 3, 2015. Data Engine filed its motion on November 6, 2015, and—citing "impending deadlines for expert discovery"—filed its motion on an emergency basis, with a request for expedited briefing. (Dkt. 104.)[4]

### III.     Legal Standards

The Local Patent Rules exist to "further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007). In general, expert reports may not introduce theories not previously set forth in the party's Patent Rule contentions. *See ROY-G-BIV Corp. v. ABB Ltd., et al.*, 63 F. Supp. 3d 690, 698 (E.D. Tex. 2014). But as this Court has explained, the scopes of Patent Rule contentions and expert reports are not coextensive. *See id*. Specifically, Patent Rule contentions need not disclose specific evidence, nor do they require a party to prove its case, whereas expert reports "must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them." *Id*. (citations omitted) (denying motion to strike infringement expert report).

"Before striking an important claim or defense, the court considers whether there is actual harm to the opposing side." *Allure Energy, Inc. v. Nest Labs, Inc., et al.*, C.A. No. 9-13-CV-102, at 3-4 (E.D. Tex. May 19, 2015). "A mere presumption of harm is insufficient." *Id*. For example, the Court may consider the degree to which a party's expert report deviates from its Patent Rule contentions, and the extent to which the moving party was reasonably on notice regarding the asserted theory, to determine whether excluding the expert testimony would be warranted. *See, e.g., DataTreasury Corp. v. Wells Fargo & Co.*, C.A. No. 2:06-CV-72 DF, 2010 U.S. Dist.

---

[4] In order to reduce the issues before the Court, IBM did not oppose Data Engine's request for expedited briefing.

LEXIS 110658, at *30-31 (E.D. Tex. Sep. 13, 2010) (denying motion to strike where party's expert report did "not deviate from [its] infringement contentions to a degree that would warrant striking [the expert's] opinions" and because movant had notice of the asserted theories).

IV. **Argument**

    A. **IBM's Invalidity Report Fully Adheres To Its Prior Disclosures, And Data Engine Does Not Demonstrate Otherwise.**

Data Engine argues that IBM's invalidity expert report relies on references or combinations of references that were not disclosed in its Patent Rule invalidity contentions or Final Election. (*See* Dkt. 103 at 3-7.) In support of that sweeping allegation, Data Engine repeatedly points to Exhibit 1 of its motion as allegedly summarizing the references allegedly not disclosed. (*See id.* at 3 ("Attached as Exhibit 1 is a chart that identifies the references and combinations presented in IBM's invalidity expert report that were not properly disclosed in IBM's invalidity contentions."); *id.* at 5 ("But IBM's invalidity contentions do not identify the same references or combinations of references now identified by IBM's expert as demonstrated in Exhibit 1.").) Exhibit 1 is a table purporting to summarize IBM's various invalidity disclosures with respect to *a single patent*—the '367 patent. (*See* Dkt. 103-1.)[5] But Data Engine asserts infringement of another patent in this case. (*See* Dkt. 95.) IBM's invalidity expert discloses opinions concerning the invalidity of both patents. The motion to strike the *entirety* of IBM's invalidity report—including opinions unrelated to the '367 patent addressed in Exhibit 1 to Data Engine's motion—is therefore overbroad and should be denied for that reason alone.

---

[5] As pointed out in its motion, at IBM's request, Data Engine prepared an analysis of references and combinations of references that it believed IBM had not adequately disclosed. (*See* Dkt. 103 at 6.) During meet-and-confer discussions, IBM explained in detail where each allegedly-improper reference or combination of references was disclosed in its invalidity contentions and Final Election of Asserted Prior Art. It is perhaps for that reason that Data Engine limited Exhibit 1 of its motion to the '367 patent, and the invalidity theories for that single patent, with which Data Engine still takes issue.

5

### 1. IBM Previously Disclosed The Invalidity Theories Set Forth In Exhibit 1 To Data Engine's Motion.

In any event, Data Engine's contention that its Exhibit 1 supports striking IBM's report is incorrect. Each invalidity theory identified in Data Engine's Exhibit 1 is listed below, along with an identification of IBM's earlier disclosure of the same theory.

- "Microsoft Access 1.0 ("Access") [§102]": Data Engine argues that while IBM fully disclosed a theory of anticipation of claims 1, 8, 9 (unasserted), 10 (unasserted), 11, and 16 of the '367 patent, IBM did not disclose a theory of anticipation with regard to claim 20 (which depends on claim 1) in its invalidity contentions. That is not true. Claim 20 in its entirety reads, "The method of claim 1, further comprising: repeating steps (a)-(d) with a new table as one of said first and second information tables, and an existing table as the other of said first and second information tables." Claim 20 merely repeats the steps (a)-(d) of claim 1, and Data Engine agrees that anticipation of claim 1 was fully disclosed in IBM's invalidity contentions and Final Election. Data Engine was accordingly fully aware of IBM's invalidity theory for claim 20.

- "Access Alone [§103]": Data Engine argues that while IBM fully disclosed a theory of anticipation of claims 1, 8, 9, 10 (unasserted), 11, and 16 of the '367 patent by Access, as well as fully disclosed Access under a theory of obviousness for claims 10 (unasserted) and 11, IBM did not disclose a theory of obviousness for unasserted claim 9 in IBM's invalidity contentions. That is not true. Claim 11 depends on unasserted claim 10, which further depends on unasserted claim 9. Claim 10 reads in its entirety, "The method of claim 9, wherein step (e) includes: locating at least one indexable field of the second table having a data type compatible with said unique key." Unasserted claim 9 depends on claim 1 and in its entirety reads, "The method of claim 1, further comprising: (e) if a foreign key is not available, determining at least one indexable field of the other table which may serve as the foreign key." As Data Engine agrees that claim 10 was

fully disclosed, which merely looks to a subset of the indexable fields identified in claim 9 that have a compatible data type, IBM's invalidity theory of obviousness concerning claim 9 was fully disclosed within unasserted claim 10.

- "Microsoft FoxPro 2.5 ("FoxPro") [§102]": Data Engine argues that while IBM fully disclosed a theory of anticipation of claims 1 and 8 of the '367 patent and fully disclosed a theory of anticipation of claims 9, 10, 11, 16, and 20 in its Final Election, IBM did not disclose a theory of anticipation for unasserted claims 9 and 10, or claims 11, 16, or 20 in its invalidity contentions. That is not true. Each of these claims depends on claim 1, which Data Engine agrees is fully disclosed. Accordingly, Data Engine was fully aware of IBM's invalidity theory.

- "Access + FoxPro 2.5 [§103]": Data Engine incorrectly argues that IBM failed to disclose the combination of Access and FoxPro 2.5 in its invalidity contentions. IBM's invalidity contentions expressly identify this combination. (*See* Ex. D at 13-15) (charting the FoxPro 2.5 reference and includes combination with Access for elements 9, 10, and 11.) Additionally, IBM's Final Election expressly discloses these references. (*See* Ex. B at 4.)

### 2. Data Engine's Other Arguments Should Be Rejected.

Data Engine advances several additional arguments in its motion that are not addressed in Exhibit 1. As explained below, each of those arguments should be rejected.

- "Cavallero" and Barsalou": Data Engine argues that "IBM's expert relies on the Cavallero and Barsalou references, which were not previously disclosed by IBM." (Dkt. 103 at 3.) During the meet-and-confer process, to reduce the issues pending before the Court, IBM offered to withdraw any reliance on the Cavallero and Barsalou references to demonstrate that the claims of the '025 patent are invalid as obvious. Data Engine's motion does not make

mention of that fact. Nonetheless, IBM's expert will not rely at trial on the Cavallero and Barsalou references to demonstrate invalidity of the asserted '025 patent claims.

- "Associated References to a prior art instrumentality": Data Engine asks this Court to "strike all associated references to a prior art instrumentality not charted by IBM in its invalidity contentions or elected within its final election of claims." (Dkt. 103 at 4.) But Data Engine does not point to any "associated references" that it believes were not previously disclosed. Nor can Data Engine credibly argue that any "associated reference" was first introduced in IBM's expert reports. For example, IBM's invalidity contentions illustrate that Microsoft Access 1.0 and Microsoft FoxPro 2.5 invalidate the asserted claims of each of the patents-in-suit, including through screenshots of the program itself. (*See* Ex. E at 2; Ex. D at 4.) During discovery, IBM issued a subpoena to Microsoft to obtain a copy of the same software program from Microsoft's archives. As soon as Microsoft produced the software, IBM sent letters to counsel for Data Engine (on June 10, 2015, approximately four months before service of IBM's invalidity expert report, and again on June 19, 2015) specifically describing the production of Access, FoxPro, and other software. (Exs. F, G.) Likewise, the Microsoft materials were specifically identified to Data Engine by Bates number in IBM's Final Election. (*See* Ex. B at 4.) Data Engine's broad request is without basis and should be denied.

### B. IBM's Expert Report Adheres To This Court's Limits On The Number Of Prior Art References.

Months after IBM served its Final Election, Data Engine now complains, for the first time, that IBM's disclosures did not comply with General Order 13-20 because "IBM refuses to count each obviousness combination as a separate reference." (Dkt. 103 at 8.) That is not true. IBM invalidity theories, as they were set forth in its Final Election and adhered to in its expert report, are summarized below:

8

**U.S. Pat. No. 5, 615,367:**

1.      **Microsoft Access 1.0 (instrumentality)** anticipates the asserted claims of the '367 patent or renders the asserted claims of the '367 patent invalid as obvious alone in view of what one of ordinary skill in the art would have understood at the time prior to the date of alleged invention of the asserted claims.

2.      **Microsoft FoxPro 2.5 (instrumentality)** anticipates the asserted claims the of the '367 patent or renders the asserted claims of the '367 patent invalid as obvious alone in view of what one of ordinary skill in the art would have understood at the time prior to the date of alleged invention of the asserted claims.

3.      **Microsoft Access 1.0 (instrumentality)** renders the asserted claims of the '367 patent invalid as obvious **in combination with Microsoft FoxPro 2.5 (instrumentality)** and in view of what one of ordinary skill in the art would have understood at the time prior to the date of alleged invention of the asserted claims.

**U.S. Pat. No. 5,603,025:**

4.      **Schwabe et al., "Hypertext Development Using Model-based Approach," Software-Practctive and Experience, Vol. 22(11), 937-962 (November 1992) ("Schwabe")** anticipates the asserted claims of the '025 patent or renders the asserted claims of the '025 patent invalid as obvious alone in view of what one of ordinary skill in the art would have understood at the time prior to the date of alleged invention of the asserted claims.

5.      **Schwabe** renders the asserted claims of the '025 patent invalid as obvious **in combination with Bassetti et al.,** *Applications Navigator: Using Hypertext to Support Effective Scientific Exchange*  **(December 1991)("Bassetti")** and in view of what one of ordinary skill in the art would have understood at the time prior to the date of alleged invention of the asserted claims.

6.      **Schwabe** renders the asserted claims of the '025 patent invalid as obvious **in combination with Beiber, et al.,** *Bridge Laws in Hypertext: A Logic Modeling Approach* **(July 1991)("Beiber")** and in view of what one of ordinary skill in the art would have understood at the time prior to the date of alleged invention of the asserted claims.

7.      **Schwabe** renders the asserted claims of the '025 patent invalid as obvious **in combination with** Wesley-Tanaskovic, et al., *Expanding Access To Science and Technology: The Role of Information Technologies* **(May 1992) ("Forest")** and in view of what one of ordinary skill in the art would have understood at the time prior to the date of alleged invention of the asserted claims.

8.      **Schwabe** renders the asserted claims of the '025 patent invalid as obvious **in combination with U.S. Pat. No. 5,537,590 to Amado ("Amado"), filed August 5, 1993** and in view of what one of ordinary skill in the art would have understood at the time prior to the date of alleged invention of the asserted claims.

As demonstrated above, IBM properly limited its invalidity theories to (less than) six references per patent, and (less than) twenty references in this case, in adherence to the provisions of General Order 13-20. That includes separately counting combinations of references—for example, counting Microsoft Access 1.0, Microsoft FoxPro 2.5, and the combination of Microsoft Access 1.0 and Microsoft FoxPro 2.5 as three "references" for the '367 patents—in conformance with the General Order.

The dispute between the parties is whether an anticipatory reference, which also serves as a single-reference obviousness combination, should be counted as two separate "references" under the General Order. Data Engine cites *Allure Energy, Inc. v. Nest Labs, Inc*. for that proposition. But *Allure Energy* considered a different issue. The defendant disclosed several combinations of references in its Final Election of Asserted Prior Art, and later sought to rely on two references within those combinations (the "Ivang" and "Inncom" references, underlined in red below) as stand-alone anticipatory references:[6]

> Defendants assert the following prior art references render the Asserted Claims of U.S. Patent No. 8,571,518 invalid:
>
> - U.S. Patent Application Publication No. 2010/0081375 ("Rosenblat"), U.S. Patent No. 7,130,719, including U.S. Provisional Patent Application No. 60/368,963 by the same author and incorporated by reference (collectively "Ehlers"), and U.S. Patent No. 6,478,233 ("Shah");
>
> - Ehlers and Shah;
>
> - **PCT Published Application No. WO 2009/036764 ("Ivang"), Ehlers, and Shah;**
>
> - **Inncom Thermostat system[3], Ehlers, and Shah**; and
>
> - BAYweb Thermostat system, **Ivang**, Ehlers, and Shah.

---

[6] *See* Plaintiffs' Motion, Dkt. 219 at 3, *Allure Energy, Inc. v. Nest Labs, Inc., et al.*, Case No. 9:13-cv-00102-RC (E.D. Tex. Apr. 22, 2015).

In that context, the *Allure* court explained that the Ivang and Inncom references should have been listed separately as anticipatory references.[7] IBM's disclosures are fully consistent with the *Allure* court's reasoning. For example, as illustrated above, IBM intends to rely on the combination of Microsoft Access 1.0 and Microsoft FoxPro 2.5 to establish invalidity of the '367 patent; but IBM also intends to rely on each of those instrumentalities as anticipatory, and has accordingly listed each separately as well.

By contrast, the Court in *Personal Audio LLC* considered the question at issue here. In that case, the invalidity expert opined that the asserted claims "would have been obvious based on each anticipation reference alone based on the knowledge of one of ordinary skill in the art and common sense." *Personal Audio*, 2:13-cv-00013-JRG, Dkt. 252, at 2. Much like Data Engine here, the plaintiff complained that the expert's position "creates 'potentially hundreds of obviousness combinations.'" *Id*. The Court disagreed, finding that an expert's contention that "each individual prior art reference asserted for anticipation may also serve as a single-reference obviousness combination" did not require listing both theories as separate "references." *Id*.[8] The Court declined to strike the entirety of the report "simply due to the fear that Defendants will attempt to elicit testimony from [the expert] that exceeds the scope of his report." *Id*. at 2-3.

---

[7] *Allure Energy, Inc. v. Nest Labs, Inc., et al.*, Case No. 9:13-cv-00102, Dkt. 284 at 4 (E.D. Tex. May 19, 2015).

[8] Notably, even under Data Engine's incorrect interpretation, IBM still adheres to the provisions of General Order 13-20. Adopting Data Engine's interpretation would still only yield 5 theories for the '367 patent (Access [§102]; Access [§103]; FoxPro [§102]; FoxPro [§103]; Access + FoxPro [§103]), and 6 theories for the '025 patent (Schwabe [§102]; Schwabe [§103]; Schwabe+Beiber [§103]; Schwabe+Bassetti [§103]; Schwabe+Forest [§103]; Schwabe+Amado [§103]).

IBM's expert will adhere to the theories disclosed in his report. Data Engine's arguments are the same as those rejected in *Personal Audio*, and they should likewise be rejected here.[9]

At demonstrated in this brief, IBM disclosed its invalidity references and theories in clear fashion in its Preliminary Election (in March 2015), Final Election (in August 2015), and in its expert report (served six weeks ago), and it complied with this Court's limitations on references as set forth in General Order 13-20. Tellingly, Data Engine never lodged a single complaint regarding any of those disclosures until just before it filed this motion, and almost a month after receiving IBM's invalidity report. And while Data Engine alleges widespread confusion and accuses IBM of "flagrantly violat[ing]" this Court's orders, (Dkt. 103 at 2), ultimately its motion boils down to a few discrete disputes which, for the reasons explained above, should be resolved in IBM's favor.[10]

### C. Data Engine's Request For Leave To Designate A Third Expert Should Be Denied.

As demonstrated above, IBM properly disclosed and limits its invalidity theories in adherence to the provisions of General Order 13-20. As Data Engine's motion to strike identifies only a few discrete invalidity theories that Data Engine (incorrectly) contends were not previously disclosed, the limited disputes do not justify Data Engine's need for an additional expert that circumvention of the Court's limitations on experts.

---

[9] For similar reasons, the Court should reject Data Engine's request that the Court strike opinions that a claim limitation would have been obvious to one of ordinary skill in the art without citation to a specific reference. (Dkt. 103 at 9-10.) Whether an expert's testimony standing alone is enough to demonstrate invalidity is not a question for a motion to strike, but rather for the factfinder at trial. *Personal Audio*, 2:13-cv-00013-JRG, Dkt. 252, at 3; *Droplets*, 2:11-cv-00401-JRG, Dkt. 346 at 4-5.

[10] For the same reasons, this Court should deny Data Engine's request for leave to supplement its rebuttal expert report. Data Engine had ample time to raise any concerns with IBM, and the limited disputes actually addressed in its motion demonstrate that there is no credible justification for Data Engine's decision to wait almost a month after receiving IBM's invalidity expert report before raising a single objection.

12

In fact, Data Engine's protests concerning alleged deficiencies in IBM's invalidity expert reports are undermined by the fact that—by its own representation—Data Engine's new expert was able to acquaint himself with the issues in the case and submit a rebuttal validity expert report in less than three weeks. In particular, according to Data Engine, on October 22, 2015, it retained Mr. Martin Haeberli in this case. (Ex. H.) Data Engine has represented that Mr. Haeberli began work on his invalidity expert report either on or after his October 22 retention. As explained in IBM's Motion to Enforce the Court's Discovery Order (Dkt. 107), under the circumstances, there is no credible reason why Data Engine could not have had its infringement expert (Dr. Sam Malek) do the same thing.

**V.      Conclusion**

For the foregoing reasons, IBM respectfully requests that this Court deny Data Engine's motion (Dkt. 103) in its entirety.

| | |
|---|---|
| Dated: November 19, 2015 | */s/ John M. Desmarais, with permission by Michael E. Jones* <br> Michael E. Jones (State Bar No. 10929400) <br> mikejones@potterminton.com <br> Allen F. Gardner (State Bar No. 24043679) <br> allengardner@potterminton.com <br> POTTER MINTON P.C. <br> 110 N. College Avenue, Suite 500 <br> Tyler, TX 75702 <br> Telephone: 903-597-8311 <br> Facsimile: 903-593-0846 <br><br> John M. Desmarais (admitted *pro hac vice*) <br> jdesmarais@desmaraisllp.com <br> Jon T. Hohenthaner (admitted *pro hac vice*) <br> jhohenthaner@desmaraisllp.com <br> Jason Berrebi (admitted *pro hac vice*) <br> jberrebi@desmaraisllp.com <br> Ameet A. Modi (admitted *pro hac vice*) <br> amodi@desmaraisllp.com <br> Jeffrey S. Seddon II (admitted *pro hac vice*) <br> jseddon@desmaraisllp.com |

> Edward Terchunian (admitted *pro hac vice*)
> eterchunian@desmaraisllp.com
> DESMARAIS LLP
> 230 Park Avenue
> New York, NY 10169
> Telephone: 212-351-3400
> Facsimile: 212-351-3401
>
> *Attorneys for Defendant International Business Machines Corp.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 19, 2015.

/s/ Michael E. Jones